UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VICTOR L. PARKER,

    Plaintiff,

v.                                                    Case No. 8:02-cv-1929-T-23MAP

ALLEN OVERSTREET, *et al.*,

    Defendants.

_____/

## **O R D E R**

Parker alleges that his civil rights were violated when defendants Allen Overstreet, Jack Howdeshell, and Thomas Hamilton prevented the delivery of two specific magazine issues. Pending is defendants' motion for summary judgment (Doc. 46), which Parker opposes (Doc. 59).

### STANDARD OF REVIEW

Summary judgment is proper "if pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. See *In re Optical Technologies, Inc.*, 246 F.3d 1332, 1334 (11th Cir. 2001). The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. *Johns v. Jarrard*, 927 F.2d 551, 555 (11th Cir. 1991). The material before the court must be viewed in the light most

favorable to the non-moving party and show that the non-moving party is not entitled to relief under any set of facts alleged in the complaint. *See generally*, *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590 (11th Cir. 1995). Even though allegations in a pro se complaint are held to less stringent standards than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam), *Tannenbaum v. United States*, 148 F.3d 1262 (11th Cir. 1998), the plaintiff's allegations must have factual support. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir.) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986))*, reh'g and suggestion for reh'g en banc denied*, 182 F.3d 938 (11th Cir.), *cert. dismissed*, 528 U.S. 948 (1999).

Once the movant presents evidence which, if not controverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the non-moving party to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Pennington v. City of Huntsville*, 261 F.3d 1262 (11th Cir. 2001). If the factual context makes one party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Wood v. City of Lakeland*, 203 F.3d 1288 (11th Cir. 2000). *See also Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) ("A court need not permit a case to go to a jury, however, when the inferences that are drawn from

the evidence, and upon which the non-movant relies, are 'implausible.'"). A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the differing versions of the truth. *Anderson*, 477 U.S. at 248.

## FACTS

The defendants, acting as the Florida Department of Corrections' Literature Review Committee, determined that the September 2002 issue of "Stuff" magazine and the September 2003 issue of "F.H.M." magazine were inadmissible reading material in state prisons. This determination was pursuant to Rule 33-501.401(2)(f), Florida Administrative Code. The defendants' determination precluded the delivery of the two magazines to Parker and other inmates in the state prison system.

## ANALYSIS

### I

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). Parker claims in his First Cause of Action that the defendants violated his First Amendment rights when they censored his incoming mail without applying the state's obscenity law. He alleges that the defendants failed to properly apply the state's obscenity law when they determined that the magazines were not admissible reading materials. He contends that the obscenity test established in *Miller v. California*, 413 U.S. 15, 34 (1973) ("The First Amendment protects works which, taken as a whole, have serious literary, artistic,

- 3 -

political, or scientific value. . . ."), constrains the defendants' discretion when determining admissible reading materials.

A

Parker argues that the defendants failed to apply the *Miller* test, however, the *Miller* test does not apply to prisons.

> The district court relied on the requirement set forth in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), that allegedly obscene publications be evaluated as a whole. It was error to rely on *Miller,* a case involving the First Amendment rights of non-incarcerated persons. By contrast, prison inmates retain only such First Amendment rights as are not inconsistent with their status as prisoners. *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). There is clearly no *per se* bar to censorship of incoming prisoners' mail. *See Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Abbott v. Meese,* 824 F.2d 1166 (D.C.Cir.1987), *vacated by Thornburgh v. Abbott,* 490 U.S. 401, 407-08, 109 S.Ct. 1874, 1878-79, 104 L.Ed.2d 459 (1989); *McCorkle v. Johnson,* 881 F.2d 993 (11th Cir.1989).

*Lawson v. Singletary*, 85 F.3d 502, 507 fn7 (11th Cir. 1996). Additionally, *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997), is inapposite because it applies only to access to sexually explicit materials by the general public, not prisoners.

B

Parker retains some First Amendment protections, specifically including the right to receive mail. "[A] prison inmate 'retains those constitutional rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of

- 4 -

the corrections system.'" *Turner*, 482 U.S. at 95, quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Although incarcerated individuals retain the right to receive mail, the right is not an unrestricted one; prisons may adopt regulations that infringe on constitutional rights if the regulations are "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989), citing *Turner v. Safley*, 482 U.S. 78, 89 (1987). *See also Procunier v. Martinez*, 416 U.S. 396 (1974). In a prison setting, whether censorship of mail is appropriate depends on the specific circumstances.

The Florida Administrative Code, specifically, 33-501.401, guides prison officials when determining whether incoming mail qualifies as admissible reading material in Florida prisons. The purpose of the regulation is to place restrictions on an inmate's First Amendment rights.

> Inmates shall be permitted to receive and possess publications per terms and conditions established in this rule unless the publication is found to be detrimental to the security, order or disciplinary or rehabilitative interests of any institution of the department, or any privately operated institution under contract with the department, or when it is determined that the publication might facilitate criminal activity. Publications shall be rejected when one of the following criteria is met:
>   (a) It depicts or describes procedures for the construction of or use of weapons, ammunition, bombs, chemical agents, or incendiary devices;
>   (b) It depicts, encourages, or describes methods of escape from correctional facilities or contains blueprints, drawings or similar descriptions of Department of Corrections facilities or institutions, or includes road maps that can facilitate escape from correctional facilities;
>   (c) It depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs or other intoxicants;
>   (d) It is written in code;
>   (e) It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption;
>   (f) It encourages or instructs in the commission of criminal activity;

>   (g) It is dangerously inflammatory in that it advocates or encourages riot, insurrection, disruption of the institution, violation of department or institution rules;
>   (h) It threatens physical harm, blackmail or extortion;
>   (i) It depicts sexual conduct as follows:
>       1. Actual or simulated sexual intercourse;
>       2. Deviate sexual intercourse;
>       3. Sexual bestiality;
>       4. Masturbation;
>       5. Sadomasochistic abuse;
>       6. Actual lewd exhibition of the genitals;
>       7. Actual physical contact with a person's unclothed genitals, pubic area, buttocks, or, if such person is a female, breast with the intent to arouse or gratify the sexual desire of either party;
>       8. Any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed.
>   (j) It depicts nudity in such a way as to create the appearance that sexual conduct is imminent, i.e., display of contact or intended contact with a person's unclothed genitals, pubic area, buttocks or female breasts orally, digitally or by foreign object, or display of sexual organs in an aroused state.
>   (k) Contains criminal history, offender registration, or other personal information about another inmate or offender, which, in the hands of an inmate, presents a threat to the security, order or rehabilitative objectives of the correctional system or to the safety of any person;
>   (l) It otherwise presents a threat to the security, order or rehabilitative objectives of the correctional system or the safety of any person.

33-501.401(3), Fla. Admin. Code. The validity of this regulation must be viewed through the lense of the four-part test established in *Turner*, which applies to a prisoner's receipt of incoming mail. *Abbott*, 490 U.S. at 413.

First, there "must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it," and the regulation must be neutral. *Turner*, 482 U.S. at 89. The above Administrative Code provision implemented a specific directive from § 944.11(2), Fla. Stat.

> The department shall have the authority to prohibit admission of reading materials or publications with content which depicts sexual conduct as defined by § 847.001 or presents nudity in such a way as to create the appearance that sexual conduct is imminent. The department shall have the authority to prohibit admission of such materials at a particular state correctional facility upon a determination by the department that such material or publications would be detrimental to the safety, security, order or rehabilitative interests of a particular state correctional facility or would create a risk of disorder at a particular state correctional facility.

"Safety, security, order or rehabilitative interests" is a legitimate governmental basis for promulgating the regulation. *Abbott*, 490 U.S. at 415 ("The legitimacy of the Government's purpose in promulgating these regulations is beyond question. The regulations are expressly aimed at protecting prison security, a purpose this Court has said is 'central to all other corrections goals.'") *(quoting Pell v. Procunier,* 417 U.S. 817, 823 (1974)). Additionally, the regulation is "neutral," as the Court has defined that term within the context of mail coming into a prison. *See Abbott*, 490 U.S. at 415-16 ("Where, as here, prison administrators draw distinctions between publications solely on the basis of their potential implications for prison security, the regulations are "neutral" in the technical sense in which we meant and used that term in *Turner*.").

The second *Turner* factor is "whether there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. The regulation allows Parker to receive an wide array of materials; he is precluded from receiving only those publications that meet the narrowly defined meaning of inadmissible materials. *See Abbott*, 490 U.S. at 418 ("As the regulations at issue in the present case permit a broad range of publications to be sent, received, and read, this factor is clearly satisfied.").


The third factor is what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90.  The defendants meet the third factor because allowing Parker's magazines into the prison would create the risk of inmate violence and disorder, and would interfere with inmate rehabilitation.  *See* Affidavit of James Upchurch ¶ 5-10, exhibits in support of motion for summary judgment, Attachment #2 (Doc. 47).  The present situation is very similar to that addressed in *Abbott*.

> Here, the class of publications to be excluded is limited to those found potentially detrimental to order and security; the likelihood that such material will circulate within the prison raises the prospect of precisely the kind of 'ripple effect' with which the Court in *Turner* was concerned.  Where, as here, the right in question 'can be exercised only at the cost of significantly less liberty and safety for everyone else, guards and other prisoners alike,' *[Turner],* at 92, 107 S.Ct., at 2263, the courts should defer to the 'informed discretion of corrections officials,' *[Turner],* at 90, 107 S.Ct., at 2262.

*Abbott*, 490 U.S. at 418.  The defendants have shown that accommodation is not reasonably practicable.

The fourth *Turner* factor is that "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Turner*, 482 U.S. at 90.  Parker has not proposed a ready alternative; he is required to show an alternative exists to prove that the prison regulation is not reasonable.

> [T]he existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.  This is not a "least restrictive alternative" test:  prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating  the claimant's constitutional complaint. [. . . ] But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court

- 8 -

> may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

*Turner*, 482 U.S. at 90-91(reference omitted).  Consequently, the regulation is reasonable and not an "exaggerated response."

## II

Parker claims in his Second Cause of Action that the defendants violated his right to due process when they denied him the opportunity to view the materials so he could adequately challenge the defendants' determination that the magazines were inadmissible.  Parker has not presented any legal authority holding that he has the right to view the inadmissible materials.  To the contrary, allowing him to view the magazines would defeat the goal of precluding inmates from viewing the inadmissible materials.

## III

Parker claims in his Third Cause of Action that his claims asserted in the First and Second Causes of Action equally applies to other issues of magazines the defendants censored.  Because Parker's First and Second Causes of Action are without merit, the Third Cause of Action is equally meritless.

REQUEST FOR RELIEF

Parker's request for declaratory judgment, injunctive relief, the return of censored property, the amendment of Florida Administrative Code 33-501.401 and special training for mailroom officials to comply with the *Miller* test, and any other relief, is denied.

ACCORDINGLY, the defendants' motion for summary judgment (Doc. 46) is **GRANTED**.  The clerk shall enter a judgment for the defendants and close this action.

ORDERED in Tampa, Florida, on October 6, 2005.

                                              STEVEN D. MERRYDAY
                                              UNITED STATES DISTRICT JUDGE

SA/ro